1  CRISTINA BALAN (Pro Se)
   4698 Arbors Circle
2  Mukilteo, WA-98275
   425-205-0200
3  cbalan.j2019@gmail.com

____ FILED  ____ ENTERED
____ LODGED ____ RECEIVED

JAN 15 2019  SP

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

SEA094286/SUMMONS ISSUED

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

CASE NO. **19 CV 00067**

WJP

CRISTINA BALAN,

   Plaintiff(s),

v.

TESLA MOTORS INC,

   Defendant(s).

**COMPLAINT FOR DEFAMATION**
AND REQUEST FOR INJUNCTION

DEMAND FOR JURY TRIAL

Jury Trial: ☒ Yes  ☐ No

Complaint filed: January 15, 2019

COMPLAINT AND REQUEST FOR INJUNCTION - 1

1   Plaintiff, Cristina Balan, files this Complaint for Defamation against
2   Defendant Tesla Motors Inc., as presented here.

## I. INTRODUCTION

4   1.   Plaintiff, Cristina Balan, is a well-respected, business person, specializing in design and engineering, based in Mukiteo, WA. Tesla is a corporation based in Palo Alto California, known worldwide for two general product types, Electrical Vehicles and clean energy products.

8   2.   Mrs. Balan is most recognized for her critical work on Tesla's vehicles, as memorialized by her engraved name on Tesla vehicle battery modules, where her work was heavily focused for during her work at Tesla from 2010 to 2014. In fact, Tesla stated recently is still uses methodologies Ms. Balan created to date. Ms Balan invested many years in her education, professional experience, relationships, and reputation. Tesla willfully, and repeatedly, took steps to publicly defame Ms. Balan, and specifically, devalue these lifetime investments.

15   3.   On September 8th, 2017, the Huffington Post published an article about Mrs. Balan's career, also referencing her relationship with Defendant. This article appeared to describe Mrs. Balan and her circumstance in a positive light. She holds that the original statements were true,

19   4.   On September 11th, 2017, Defendant published multiple false and defamatory statements on the Huffington Post, settling the score with the Plaintiff, after the article questioned to Tesla's CEO commitments and rules. Defendant

stated clearly, in a forum intended for worldwide and instant distribution, that Ms. Balan's acts were 'clearly criminal'.

5. Some of the acts Balan was accused of included theft of company money and resources, for a project that value more than $10,000. Mrs. Balan was accused of using the company's resources, without management approval. Defendant then claimed this was an attempt to complete a personal project Balan developed on her own.

6. Ms. Balan maintained an adversarial legal relationship with Tesla for the past 4 years, beginning in an arbitration over a former employment relationship that ended in 2014. While engaged in this adversarial legal relationship, the Defendant published multiple false and defamatory statements about Mrs. Balan, in an unlawful and malicious fashion.

7. Plaintiff and Arbitrator Warner are in this case, and have been of the same mind, that Ms. Balan's behaviors were not clearly criminal, and that none of these felonious activities ever took place, including the trip to New York.

8. Defendant was unable to produce any records or credit card charges, plane tickets, meals, cars, of the claims they made, and that Tesla had accused her of travelling to New York in Nov 2013, a place that to this day, Mrs. Balan has never been. Regardless, Defendant did not take any action to resolve the matter.

9. Balan has attempted diligently to convince Defendant to remove the false and defamatory statements from the internet. Plaintiff's former attorney

1  requested the removal during the arbitration. Tesla refused. In September 20th,
2  2018, Plaintiff communicated a demand to remove the false statements. Tesla
3  contacted Balan on October 2018, claiming to confer in good faith. These
4  conversations did not lead to resolution, and the false claims remained.
5      10.   It was not until a friend of Ms. Balan's sent a letter directly to
6  Huffington Post, that Huffington Post's counsel, got involved. This comment from
7  Tesla, accusing Balan of clearly felonious behavior, remained on the internet until
8  approximately December 20th, 2018, approximately 15 months. To date, Tesla has
9  taken no action to mitigate the damages caused by these acts. Huffington Post
10 showed a sign of good faith, by removing the note almost immediately after
11 receiving notice of Arbitrator Warner's conclusions, but they also removed the
12 entire article without any redaction.
13     11.   Plaintiff brings this action to enjoin Defendant, Tesla, from further
14 damaging Ms. Balan. Tesla acted in malice, abusing both their public influence,
15 and the relationship with Balan as a litigant. Tesla should be enjoined from
16 communicating false and defamatory statements about Ms. Balan.
17     Tesla has exhibited a willingness to destroy and or conceal evidence as
18 referenced herein through exhibits illustrating behavior during arbitration. Tesla
19 should be enjoined from destroying any evidence relevant to Ms. Balan's claims
20 and enjoined from failing to preserve the same.
21

## II. THE PARTIES TO THIS COMPLAINT

A.   Plaintiff:

12.   Plaintiff, Cristina Balan, "Balan", "Plaintiff", "Mrs. Balan", is a well-respected, business person, specializing in engineering, with a degree from University of "Transylvania", Ms. Balan is most recognized for her critical work on Tesla's vehicle batteries, resulting in Tesla Awarding her by engraving her name into the battery modules. Her methodologies are still used in Tesla.

13.   Ms Balan is also a public speaker, because of her career achievements in automotive industry she was even invited to host a TEDx Talk in automotive; she had multiple tv shows and was part of dozens of articles internationally. Including how to be a woman in automotive; Plaintiff currently owns and operates a Design House business called Tesseract Motors LLC in Washington state.

B.   The Defendant

14.   Defendant, Tesla Inc., "Tesla", is a corporation from 3500 Dear Creek Rd, Palo Alto California that produces electrical vehicles and solar panel systems. Its reported mission is to accelerate the world's transition to clean and sustainable energy

15.   Defendant is led by CEO Elon Musk. As of 2018, Musk was reported to have a net worth of $20.2 Billion and is listed by Forbes as the 46th-

COMPLAINT AND REQUEST FOR INJUNCTION - 5

1 richest person in the world. In December of 2016, Musk was ranked 21st on the
2 Forbes List of the World's Most Powerful People. At all times relevant to this
3 action, Musk maintained a known public following through Twitter, a leading
4 social network, of over 21 million followers.

5

6            **III.   JURISDICTION AND VENUE**

7     16.   This Court has diversity jurisdiction pursuant to 28 U.S.C. §
8 1332(a)(2) over this defamation. Ms. Balan is a resident of The State of
9 Washington, living in Mukiteo since 2014, being a green card resident of the
10 United States.

11     17.   Defendant, Tesla Inc., is a corporate citizen of California, with its
12 principle place of business, in Palo Alto California.

13     18.   Defendant can be served with summons and complaint at it's
14 headquarters in California, or through its Agent of Serve, registered with the State
15 of Washington's Secretary of State.

16     19.   Ms. Balan and Tesla are citizens of different states, and the matter in
17 controversy is exceeds the sum or value of $75,000.00, exclusive of interest and
18 costs. Plaintiff estimates actual damages to be far greater due to the damages that
19 Tesla's maliciously acted towards her.

20     20.   This Court has jurisdiction of this civil action pursuant to 28 U.S.C. §
21 1332.As the direct and proximate result of Tesla's defamatory accusations, Ms.

COMPLAINT AND REQUEST FOR INJUNCTION - 6

Balan suffered damage to her reputation in Washington, and California, as well as on a national and international basis.

21. The communications were verbalized and written, in the State of California, and published and republished to all of the United States, and internationally.

22. As one of the largest, and most publicized auto makers in the U.S., led by one of the ' most powerful and publicized people on earth', Tesla knew that the false accusations would be conveyed to a worldwide and personally interested, audience

23. In this action, Ms. Balan seeks a recovery for the worldwide damage that she has suffered to her reputation.

24. This Court has both general and specific jurisdiction over Tesla.

25. Venue is proper in this Court, pursuant to 28 U.S.C. §§ 1391(b)(1)-(2).

### IV. FACTUAL BACKGROUND

#### A. Huffington Post Article about Ms Balan

26. On September 8th, 2017, the Huffington Post reporter approached Ms. Balan and asked her to interview her about her career, but also why her relationship with Defendant ended. This article appeared to describe Mrs. Balan and her circumstance in a positive light. She holds that the original statements were true **EXHIBIT A.** This was not Ms. Balan first US article, WSJ was the first

27. During her interview Ms Balan told her story of what happened after replying, with serious concerns, to Defendant's CEO email sent in 2013 called "communication within Tesla" in which he explicit details what will happen if someone from Tesla will force the chain of commands;

> "Instead of a problem getting solved quickly, where a person in one dept talks to a person in another dept and makes the right thing happen, people are forced to talk to their manager who talks to their manager who talks to the manager in the other dept who talks to someone on his team. Then the info has to flow back the other way again. This is incredibly dumb.
> Any manager who allows this to happen, let alone encourages it, will soon find themselves working at another company. No kidding."

> "Anyone at Tesla can and should email/talk to anyone else according to what they think is the fastest way to solve a problem for the benefit of the whole company. You can talk to your manager's manager without his permission, you can talk directly to a VP in another dept, you can talk to me, you can talk to anyone without anyone else's permission. Moreover, you should consider yourself obligated to do so until the right thing happens."

A full and true copy of the email is attached in **EXHIBIT B.**

28. The reporter Paul Alexander, was shocked to hear how many other reporters where stopped to ask the question if Elon Musk received or not Ms Balan emails and serious evidence, containing safety, quality and management concerns from an entire team, not just Ms Balan and concluded his article by saying:

> "Part of her claim is that she was fired for doing precisely what Musk ordered his employees to do in his now-famous email — come to him with information and concerns about Tesla. When she did, Musk was not only unresponsive, but she was fired. No kidding."

A full and true copy of the article is attached in **EXHIBIT A**

B.    **Tesla's Defamatory Statements Added to Huffington Post article**

29.    In reaction On September 11th, 2017, Defendant attached a reply to Huffington Post's article, stating multiple false and defaming claims about Ms. Balan. Specifically, Defendant stated in the **EXHIBIT A**

30.    "Ms. Balan spent company time working on a "secret project" without her manager's approval and"

31.    "booked an unapproved trip to New York at Tesla's expense to visit a potential supplier for her own personally-created project."

32.    "Ms. Balan was unhappy with a particular supplier that was selected by an internal group of subject matter experts who extensively studied the issue. She took it upon herself to find an alternative supplier that had no prior relevant experience"

33.    "She also illegally recorded internal conversations within Tesla without anyone's permission, which is clearly criminal conduct"

34.    Tesla continue by saying that "particularly emails that are not relevant to our mission or the job at hand or are clearly suspect or misleading" does not "warrants a response".

35.    "contrary to Ms. Balan's claims, despite her own misconduct, she was never fired from Tesla. She voluntarily resigned – not just once, but on multiple occasions."

36. "Ms. Balan left Tesla the first time because we had previously provided her with a special 10-month living stipend as an accommodation to help her with family issues, and she wanted that stipend to be extended even further. When we did not extend it, she quit" "Also contrary to her claims, she never once informed the company she had any kind of significant medical problem prior to her resignation"

37. Tesla in their maneuvers to convince everyone how correct they are in holding the absolute truth, they say Anyone in engineering, legal, executive, medical, and any other fields, that "Anyone looking objectively at Ms. Balan's theories can see that they are patently false, and frankly, completely nonsensical an see that Balan's theories are "patently false, and frankly, completely nonsensical."

### C. Balan's Claims and Factual Background

38. Combined with everything that was said from Paragraph 1 thru 37 Ms. Balan States the following

39. Ms Balan Never "spent company time working on a "secret project" without her manager's approval". Ms Balan project was approved by the highest level in Tesla after Elon Musk, Doug Field. Rich Heley the VP of Product Excellence was involved along with other 3 directors, quite a few managers and technicians.

   (a) Mr Heley confirmed as the **EXHIBIT C** shows:

> "Cristina I had a conversation with Doug Field tonight and he is still interested in exploring the visor concept"

(b) Ms Balan also had the Financial approval as well, as seen on **EXHIBIT D,** the purchase order signed and ordered by Doug Field when asked about the project he said:

> "This one is no-brainer; let's spend the money. It might be to late for X but this could be a big feature on future vehicles"

(c) Doug Field and an entire team of high-level executives' support Ms. Balan in her patent idea **EXHIBIT E**

> "I think this is a really important technology for Tesla...I'm still obsessed with the idea of eliminating traditional sun-visors with ... this technology"

40. Ms. Balan Never been to New York in her life, business or pleasure. Tesla could never produce any evidence of the expenses they claim they paid or booking for any "unapproved trip to New York at Tesla's". It was a discussion and planning for schedule a trip, with approval, but canceled after.

41. Ms Balan patent idea was Not for her "own personally-created project." Was for a feature that could help Tesla products, not her personally. Idea that she was asked to look into by her own direct director Eric Bach. When she come up with an even more amazing idea, she was told by her direct manager at the time that a woman's brain will never be about to do a project or a patent like this; luckily not everyone at Tesla felt the same way;

COMPLAINT AND REQUEST FOR INJUNCTION - 11

1   42.  Ms. Balan was not "unhappy with a particular supplier", she was
2   unhappy to lie and cut the quality for any supplier as she was asked to.
3   43.  Ms Balan Never "took it upon herself to find an alternative supplier that
4   had no prior relevant experience". Tesla lies again with something that are clear
5   evidences for.
6   44.  On one-point Ms Balan assistant manager let her know what projects
7   are coming down the pipe. As the **EXHIBIT E** will show. A week later she was
8   introduced for the firt time to the supplier Tesla is accusing Ms Balan of taking
9   upon herself to find them and present herself and the project she was working on,
10  as the **EXHIBIT F**
11  45.  Ms Balan disagree with the fact she sent "particularly emails that are
12  not relevant to our mission or the job at hand or are clearly suspect or misleading"
13  does not "warrants a response". When people are threated because they rise quality
14  or safety issues, when they worried that they will be deported if they try to do
15  what's right and we are talking as an entire team, Ms. Balan strongly believes it is
16  "warrant a response" especially when those emails and evidence contain criminal
17  behavior!
18  46.  MS Balan never did anything criminal. At issue is the statement Tesla
19  made that Ms. Balan's behavior, was clearly criminal.
20       "She also illegally recorded internal conversations within Tesla without anyone's permission, which is clearly criminal conduct"
21

COMPLAINT AND REQUEST FOR INJUNCTION - 12

47. Ms. Balan was not charged with a criminal action.

48. A criminal conviction for the act Tesla accused Ms. Balan of, would require a much greater showing of evidence, namely, proof beyond a reasonable doubt to a moral certainty.

49. If Tesla felt Ms. Balan had broken the law, and damaged Tesla, it could have pursued criminal and or civil action through the appropriate channels available when Ms. Balan presented the evidence of serious acts inside Tesla. The only thing Ms. Balan wanted was to show her CEO what was going on. Tesla did not pursue civil action, nor was criminal action brought against Ms. Balan. Tesla knew the statute of limitations, which would have arisen if their accusation were true, has run out.

50. Consequently, Tesla's right as a U.S. citizen to have any court of competent jurisdiction rule on the matter's merits, and to stake its claim to that ruling, has also been extinguished through waiver.

51. Tesla did not state its opinion was that Balan's behavior was criminal.

52. Tesla stated that Balan's behavior was 'clearly criminal'. Tesla intended this claim to represent their conclusions, and to cause others to arrive at the same conclusion. In short, Tesla's claim of criminal behavior could not at the time, have been less 'clear'. At the time Tesla admitted they warned Ms. Balan to destroy the evidence/recordings.

53. Ms Balan never "She voluntarily resigned – not just once, but on multiple occasions." She was forced out after opening an internal investigation which Tesla Never "investigated extensively", if not other colleagues of Ms. Balan will be fired and deported. Ms Balan was petrified and then sent her resignation.

54. Ms. Balan did not "left Tesla the first time" because the "living stipend" was not "extended even further". It was because she told Tesla they are breaking the law, as she was misclassified. Ms Balan Win the Misclassification.

IF Tesla would have not breaking the law and paid accordingly Ms. Balan; there not have been two resignation discussions.

55. Ms Balan disagree on the statements "Also contrary to her claims, she never once informed the company she had any kind of significant medical problem prior to her resignation". Not Formally, but Tesla knew thru an internal party that Ms. Balan was part of, the fact Ms. Balan will find out in 5 days if the multiple tumors she just found out she has on her breasts could be cancer. This happened two days after Ms. Balan agreed to retract her resignation for misclassification and Tesla accepted. All the work was giving back to Ms. Balan like nothing happened. Two days after the cancer news, Tesla "change their mind" and told Ms. Balan is her last day.

56 Later Ms. Balan requested all the emails of her last week, but Tesla legal counselor testified that the entire company, everyone, lost 3 weeks of emails, but on one-point just 'some emails' from the "glitch" period appeared

COMPLAINT AND REQUEST FOR INJUNCTION - 14

1 Tesla's IT expert could not explain how that happened.

2 57. A few months later Tesla approached Ms Balan and asked her about
3 her health. She responded she is well, and her tumors are not cancer; soon after
4 Tesla asked Balan to return to Tesla, but with the conditions to forget what
5 happened 3-4 months before, between her and Tesla related to cancer. Balan agree

6 58. Ms. Balan's claims are not theories are facts not only objective but are
7 backed by clear evidence and she strongly disagree that "they are patently false,
8 and frankly, completely nonsensical"

9 59. Ms. Balan took multiple steps to attempt to mitigate her damages.
10 Ms. Balan instructed her attorney to take reasonable action to remedy the illegal
11 act. He stated that he had called Tesla, but the reply was not be removed.

12 60. Mr. Balan attorney prepared a statement to send a comment to
13 Huffington Post to remove the comment or post a reply; she did what she was
14 instructed. Huffington Post did nothing; they refuse to publish Ms Balan comment;
15 **EXHIBIT I;**

16 61. As a last result until the current litigation will close and Ms. Balan
17 wrote on her blog what she thought was untrue in Tesla's note. Mr. Balan attorney
18 reminded her that Tesla is very malicious and should stop updating her blog for
19 now.

20 62. Ms Balan lawyer asked her to focus on finalized her current legal case
21 with Tesla at that time before opening the Defamation lawsuit, but that changed

1  after Tesla's CEO Elon Musk, stated publicly on August 2018 that his and

2  automatically his company legal position is that if a person publishes statements

3  about you that damage you, and you don't sue the person who is the source of the

4  statements, they must be true. Mr. Musk's total followers worldwide on Twitter,

5  currently sits at approximately 22.5 million followers.

6      63.    All of the false and defamatory accusations by Tesla against Balan,

7  were published without privilege and with actual knowledge of falsity, or with a

8  reckless disregard for truth or falsity.

9      64.    At the time when Tesla made the defamatory statements Tesla knew

10 Ms. Balan was suffering from PTSD from the way Tesla threated her to destroy her

11 evidences and for her finals moment at Tesla and knowing that Tesla still made

12 those defamatory statements

13     65.    On Sect 20, 2018 Ms. Balan Sent a letter of intent and email to Tesla's

14 CEO Elon Musk. EXHIBIT J and K

15     66.    In the end of October Tesla's counselor contacted Ms Balan to discuss

16 her demands. The most critical one was for Tesla to remove its note.

17     67.    Instead of retracting its false accusations, and ceasing its campaign of

18 litigant abuse, the defendant didn't take any action to insure the defaming

19 comments were retracted and stop been publicized worldwide, and densely within

20 audiences of Ms. Balan's professional field.

21

COMPLAINT AND REQUEST FOR INJUNCTION - 16

## V. CAUSE OF ACTION FOR DEFAMATION

68. Ms. Balan reasserts and incorporates by reference paragraph 1 - 67 of this complaint.

69. Tesla's publications in Exhibit A, as referenced in paragraphs 29, 30, 31, 32, 33, 34, 35, 36, 37 are hereinafter referred to as the "False and Defamatory Accusations."

70. The United States has passed multiple civil and criminal pieces of legislation, to protect both small, medium, and large businesses, from the types of illegal activity Tesla accused Balan of. Tesla's False and Defamatory Accusations falsely accused Balan of (1) Spending company money without approval. (2) Booking an unapproved trip to New York. (3) Producing a secret project for Tesla's windshields, at Tesla's expense, without their knowledge, and for Balan's personal gain. (4) Installed said windshield in Tesla's vehicle, without the company's knowledge or approval. (5) Performed acts which were clearly criminal.

71. Balan did not spend company money without proper approval.

72. Balan did not book an unapproved trip to New York.

73. Balan did not produce a secret project for Tesla's cars at Tesla's unapproved expense without their knowledge, and for, her personal interests

74. Balan did not install a windshield in Tesla's vehicle(s) without the company's knowledge or approval.

75. Balan did not perform acts which were clearly criminal.

COMPLAINT AND REQUEST FOR INJUNCTION - 17

76. The False and Defamatory Accusations were published without privilege and were published with actual malice.

77. Some of The False and Defamatory Accusations are defamatory per se, and damages to Ms. Balan are presumed as a matter of law.

78. The False and Defamatory Accusations are libelous on their face in that they are defamatory of Ms. Balan without necessity of explanatory matter or other extrinsic facts, and/or they impute to Balan criminal conduct.

79. The False and Defamatory Accusations directly and proximately caused substantial and permanent damage to Balan.

80. Tesla published the False and Defamatory Accusations with actual malice, that is, with knowledge of falsity or a reckless disregard for the truth or falsity.

81. Tesla has never retracted the statements.

82. Tesla published the statements, and manipulated their placement, Tesla was upset about the article placing Balan in a positive realistic light, and the possibility others will asked Mr. Musk again if he received Ms. Balan emails and critical information

83. Clearly frustrated from Huffington Post's positive piece about Balan, Tesla sought to take swift and final action, to destroy the reputation of Balan.

84. Tesla is liable for damages for each False and Defamatory Accusations, as Tesla had 3 years of litigations, depositions and discovery with

Ms. Balan and they were aware at the time they wrote this article note, of all the ins and outs. All the Exhibits that are presented here Tesla had them for years.

85. Balan has suffered an incredible amount of emotional distress as a result of Tesla's False and Defamatory Accusations. **Exhibit A**

86. Because Tesla published the False and Defamatory Accusations with both Constitutional and common law malice, Ms. Balan is entitled to an award of punitive damages to punish it for it's wrongdoing and deter him from repeating such inappropriate behavior in the future against others.

87. Tesla's conduct was willful and demonstrates a desire to dominate, and to control, not just financial returns, but the individuals laboring for them.

88. Tesla's conduct shows desire to control its public perception, and a willingness to catastrophically damage individuals who oppose that view, be it a corporation or a family, without regard for American Civil Law.

WHEREFORE, Plaintiff, Cristina Balan, respectfully prays for judgment against Defendant, Tesla Inc., as follows:

(a) Judgement be entered against Defendant, Tesla Inc., for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000), to be calculated at Trial.

(b) Judgement be entered against Plaintiff Tesla Inc., for punitive damages in an mount determined at trial, in an amount that is just by the evidence, and serving to punish Tesla., and deter it from repeating such conduct.

COMPLAINT AND REQUEST FOR INJUNCTION - 19

1  (c) A preliminary injunction be issued against Defendant, ordering Tesla to retract the False and Defamatory Accusations, and enjoining them from making False and Defamatory Accusations In the future.

(d) That all costs of this action be taxed to Defendant; and

(e) That the Court grant all such other and further relief that the Court seems just and proper.

**JURY TRIAL DEMANDED**

Dated January 15, 2019

**CRISTINA BALAN -Plaintiff**

_____