THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

CRISTINA BALAN,

                              Plaintiff,

    v.

TESLA MOTORS INC.,

                              Defendant.

Case No. 2:19-cv-00067-MJP

Judge Marsha J. Pechman

**PLAINTIFF'S RULE 60(B)(2)(3)(6) MOTION FOR RELIEF FROM THE ORDER GRANTING PARTIAL ARBITRATION & REQUEST FOR INDICATIVE RULING UNDER RULE 62.1,
BASED ON
PLAINTIFF'S FIRST 180 DAYS CASE STATUS UPDATE OF ARBITRATION PER THE COURT'S REQUEST**

Pursuant to the Court's June 27, 2019 Order, ECF No. 40, requesting that the parties provide an update every 180 days regarding the status of arbitration in this case, Plaintiff Cristina Balan ("Plaintiff") hereby provides her first detailed update, which triggered Ms. Balan request for a Motion for Relief 60(b)(2)(3)(6) and Motion for Indicative Ruling 62.1.

Critical and disturbing information was unveiled, since the order was issued, like material breach of the arbitration agreement by Defendant, by not paying their filling fee, to Plaintiff's significant challenges she experienced with JAMS itself and their approach to Pro Se litigants, one of critical issue unveiled itself even one day before the case update due date.

The Court issued the Order on the assumption that Defendant would follow through with what it wrote in its motion to compel arbitration and the statements made at oral argument: to work in good faith with the Plaintiff and JAMS to arbitrate this case. That did not happen!

PLAINTIFF'S RULE 60(B)(2)(3)(6) MOTION FOR RELIEF FROM THE ORDER GRANTING PARTIAL ARBITRATION & REQUEST FOR INDICATIVE RULING UNDER RULE 62.1, BASED ON  PLAINTIFF'S FIRST 180 DAYS CASE STATUS UPDATE OF ARBITRATION PER THE COURT'S REQUEST
(CASE NO. 2:19-CV-00067-MJP)

1

For this reason, Plaintiff spent a few more days after the 180 days, as the order requested, to update her documents, because Plaintiff strongly believes that the critical and crucial facts which happened after the Order, warrants the Court to terminate any additional attempts to arbitrate this case.

With the Federal Rule of Civil Procedure 60(b) regarding a motion for relief, combined with a indicative ruling of FRCP 62.1, Plaintiff intends to request a remand from the Ninth Circuit according to rule 12.1 if Court feels that the issues raised here are substantial issues.

According to Rule 62.1. Indicative Ruling on a Motion for Relief 60(b) That is Barred by a Pending Appeal, allows a Relief Pending Appeal, if a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

Apart from the rules mentioned above, most critical, is the new law the Governor of California signed recently: California Law SB 707 taken into effect on January 1, 2020,(See Exhibit 1), which allows employees to move their arbitration to federal court due to a party's material breach, such as nonpayment of arbitration filing fees, which fits exactly with this case and Plaintiff's request.

To start with a case update, the critical circumstances and events that happened during the past 6 months, for which Plaintiff respectfully requests critical intervention from this Court, include the following:

- Defendant's failure to pay its arbitration filing fees constitutes a material breach of the arbitration agreement, which is supported by multiple cases in the Ninth Circuit.

- Defendant's gamesmanship played before the commencing of the arbitration in order to avoid paying the arbitrator's retainer fee as well.

- JAMS's general lack of transparency and questionable behavior for *pro se* litigants, such as Plaintiff, by asking Plaintiff to sign a form stating the arbitrator can

PLAINTIFF'S RULE 60(B)(2)(3)(6) MOTION FOR RELIEF FROM THE ORDER GRANTING PARTIAL ARBITRATION & REQUEST FOR INDICATIVE RULING UNDER RULE 62.1, BASED ON  PLAINTIFF'S FIRST 180 DAYS CASE STATUS UPDATE OF ARBITRATION PER THE COURT'S REQUEST
 (CASE NO. 2:19-CV-00067-MJP)

2

terminate her case at any time during the arbitration, if he feels that he wants her to retain a lawyer. JAMS also did not point to any rule or document stating that an arbitrator has this power.

- JAMS's arbitrator in this case adding to delay by entertaining Defendant's request for a possible stay of arbitration pending the Ninth Circuit's ruling on Defendant's appeal, and not wanting to start arbitration until both parties filed their briefs with the Ninth Circuit.

- JAMS's one sided approach favoring Defendant, bluntly expressed to Plaintiff, which will shock and make anyone question the fairness of proceeding with JAMS to arbitrate this case.

- Defendant's CEO has shown no respect regarding the foregoing litigation, continued to publicly defame Plaintiff.

Justice delayed, is justice denied! And the Defendant and JAMS are doing exactly that, so the Plaintiff respectfully requests the Court to grant Plaintiff relief from having any claims subject to arbitration, especially under JAMS, and that all outstanding issues and claims relating to this case be immediately tried before the Court, due to Defendant's continuing breach of the arbitration agreement and good faith.

## I.    FIRST CASE STATUS UPDATE REQUESTED BY THE COURT

To make it easy, Plaintiff created the update of the arbitration and its factual background, in chronological order, by separating the issues she had with the Defendant and the issues she had experienced with JAMS.

## A. DEFENDANT MATERIALLY BREACHED THE ARBITRATION AGREEMENT

1    **1.   Defendant has failed to pay, from July through the present, its**

2    **filing fees for arbitration with JAMS**

3    Defendant convinced the Court that the arbitration agreement between the parties was

4    not "substantively unconscionable," as Defendant said it would pay <u>all</u> the filing fees and costs

5    of arbitration with JAMS. In its motion to compel arbitration, Defendant specifically stated:

6

7    "The Agreement also cannot be deemed substantively unconscionable based on the

     costs of arbitration. See Adler, 153 Wn.2d at 353 (party seeking to invalidate an

8    arbitration agreement based on expense bears the burden to show excessive costs).

9    Arbitration will not impose excessive costs on Plaintiff. Instead, Tesla will be

     responsible for paying the fees and costs of the arbitrator, as well as the amount of the

10   filing fee".

11   Defendant did not honor the terms of the arbitration agreement, which required

12   Defendant to pay $1,500 at the same time when they submit their response, as shows in JAMS

13   email to Defendant on June 22, 2019. (See Exhibit 2).

14   After numerous attempts from JAMS and Plaintiff, informing Defendant that it must

15   pay the filing fees, Defendant has, not once, responded to any of these communications. To this

16   date, Defendant has still not paid these filing fees.

17   When Plaintiff insistently called, leaving voicemails and emails to all the attorneys in

18   this case, asking them about the payment, the Defendant never answered to JAMS or Ms. Balan

19   if they will pay or not.  Instead, Defendant has only responded they will ask to stay the

20   arbitration, and they are very confident the arbitrator will do exactly that, for the efficiency of

21   this arbitration, but did not respond regarding the filling fee payment that was missing so JAMS

22   reminded again without any response. (Please See Exhibit 3 and 4).

23   As a direct cause of Defendant's repeated failure to pay the filing fees, Plaintiff decided

24   to pay the filing fees herself (See Exhibit 5), after the JAMS administrator informed her there

25   are employers that intentionally delay the payments even for a year, so the arbitration will not

26   begin

27   When Plaintiff asked JAMS to terminate the arbitration because of Defendant's non-

payment, she was told only an arbitrator can do that. Plaintiff had no choice, over the gamesmanship of Defendant to delay the start of the arbitration, other than paying Defendant's filing fee, so an arbitrator could be chosen, and such arbitrator can reimburse her money and sanction <u>Defendant's default of non-payment of financial obligation</u>. But none of that ever happened.

However, as Plaintiff details below, the additional acts committed by Defendant, Defendant's counsel, and JAMS only further add to Plaintiff's concerns regarding Defendant's breach of the arbitration agreement, as well as the futility of allowing JAMS to further arbitrate Plaintiff's claims in this case.

**2.** <u>**Defendant engaged again in gamesmanships and delay tactics, when the time came for them to pay the arbitrator retainer fees, as well as by requesting a stay of the arbitration**</u>

After Plaintiff paid the filing fee and, through a challenging process, an arbitrator with JAMS was found - because JAMS has only a few arbitrators who agree to work with *pro se* litigants such as Plaintiff (as described in section B.1), Defendant also tried to avoid paying the arbitrator fee. Plaintiff inform JAMS she will not be able to pay the retainer fee as well (Exhibit 6) and as promise by JAMS now that we have an arbitrator Ms Balan wanted her filling fee back. As shows in Exhibit 7, Defendant said, he just realized too he didn't receive the invoice.

Soon after, Defendant emailed the arbitrator, before paying him, and asked him to stay the arbitration due to its pending appeal with the Ninth Circuit. On Friday, September 13, 2019, Defendant specifically requested the following from the arbitrator (See Exhibit 9):

> "Given the appeal, proceeding with the arbitration at this juncture would be highly prejudicial to Tesla (and **frankly inefficient for all parties**, as well as the Arbitrator), because until the appeal is resolved, the scope of this arbitration is in question. **It is possible, if not likely**, that an arbitration in this matter **could be entirely concluded** prior to achieving a resolution of the appeal.  And, assuming the Ninth Circuit compels the remainder of Ms. Balan's defamation claim to arbitration, a second, entirely

separate arbitration would be required at that point, **at great time and expense to all involved**.  In light of the above, Tesla respectfully requests that the Arbitrator stay this matter pending a decision from the Ninth Circuit regarding the appeal.
We trust that the **information provided here is sufficient** to demonstrate the need for a stay in this matter.  However, please let us know if you need any additional information"

Plaintiff strongly opposed not just the way Defendant made this request, without a proper motion with this Court, but also the way Defendant tried to request a stay from an arbitrator who didn't received his retainer from the Defendant (See Exhibit 10).

The arbitrator's assistant manager replied to all parties, stating that a matter like this can be brought up on the first meeting with the arbitrator, after he will be paid (See Exhibit 11). Defendant didn't reply to this critical email.

First, Defendant's delay tactics prejudiced Plaintiff, because Plaintiff did not have the opportunity to properly oppose Defendant's request with JAMS. Perhaps if Defendant filed a motion with the Court, Plaintiff could have done so. But from Defendant's point of view, a simple email to the JAMS arbitrator was more than sufficient to destroy another two years of Plaintiff's life.

Defendant has known about its obligation to arbitrate since June 27, 2019, when this Court granted, in part, Defendant's motion to compel arbitration. Tesla did not then seek a stay of the arbitration in this Court, nor did it seek reconsideration from the Court regarding its Order. Instead, it was only after Plaintiff sought to commence the arbitration, and most critical JAMS asked for the filling fees, that Defendant filed a notice of appeal with the Ninth Circuit regarding the Court's Order granting arbitration in part.

These actions taken by Defendant to prevent Plaintiff from having her claims proceed in arbitration, was foiled when she advanced the JAMS filing fee on Tesla's behalf.   Not surprisingly, Tesla has not yet reimbursed this fee to date.

Defendant's failure to seek a stay in the district Court may have something to do with the district Court's finding that Defendant's pretrial tactics and behavior were, among other

things, "obstructionist" and "sanctionable."

To make matter worse, the Defendant went so far as to misrepresent to the Ninth Circuit its willingness to pay his arbitration filing fees, despite having a clear history of failing to do just that, and despite multiple attempts by JAMS to make Defendant pay what it owed in their final pages of their Opening brief.

Plaintiff's concerns regarding the futility of attempting to resolve its claims through arbitration, at least through JAMS, do not end here. As described in the following section, JAMS itself has committed a number of acts that cast doubt on JAMS ability to effectively and transparently arbitrate this matter for *pro se* litigants such as Plaintiff.

In sum, Defendant's failure to pay the arbitration fees in this case constitutes a material breach of the arbitration agreement. Whether it was Defendant's intention to do so, or it was negligent, Defendant's repeated failure to pay has only unduly delayed the outcome of this case.

### 3. **Defendant refused to cooperate in good faith and start any discussions or discovery, as suggested even by the arbitrator**

Before the parties first initial Arbitration Case Management, the Arbitrator said he "would encourage you to have a pre-conference discussion on these topics, if possible." Plaintiff initiated again an opportunity to have an open door with the Defendant, which was categorically refused (as seen in Exhibits 13), as the Defendant stated:

> "As we let you know previously, we believe the arbitration must be stayed pending the appeal. Accordingly, we plan to raise that issue with the Arbitrator on our initial call as the first issue that needs to be resolved at this stage… I don't know that there's any reason to connect to discuss it further prior to the call with the Arbitrator"

In the first call with the arbitrator, the Plaintiff expressed her concerns of the Defendant delaying the start of the discovery, the same as it happened in Federal Court, when Your Honor called them obstructionists. As a result, the Arbitrator reminded the Defendant that he always encourages the start of the discovery, even before the start of the official discovery and he

added it in his meeting minutes as well (see exhibit 14, page 4), as JAMS **Rule 17.** Exchange of Information says:

> "The Parties shall cooperate in good faith in the voluntary and informal exchange of all non-privileged documents and other information (including electronically stored information ("ESI")) relevant to the dispute or claim immediately after commencement of the Arbitration."

The Plaintiff again tried to engage, in good faith, with the Defendant and asked them to start an informal discovery, which the Defendant again refused (see exhibit 15), by trying to mislead what was said by the arbitrator during the call and in his meeting minutes.

It is very confusing how the Defendant is starting their arbitration agreement with **"To ensure the rapid and economical resolution** of disputes that may arise" when everything they are doing, for almost a year, since the Plaintiff brought this defamation claim to federal court, is to do everything in their power to delay the legal proceedings.

### B.  <u>CONCERNING BEHAVIOR BY JAMS TOWARD PLAINTIFF AND PRO SE LITIGANTS IN GENERAL</u>

#### 1.  <u>Limited number of arbitrators who work with Pro Se Parties</u>

Not Only Tesla's behavior, but also the one-sided behavior and the lack of transparency by JAMS is critical and must be discussed, because as part of Defendant's motion to compel arbitration and during the oral argument, the Defendant argued JAMS is a fair venue for arbitration, when the Court asked them why not to have the arbitration in federal court. This is entirely false and misleading.

The first Critical issue that Plaintiff had encountered, from the start, was the difficulty to find an arbitrator, because it seems, they are only a very limited number of arbitrators under JAMS which work with pro se parties.

When the Plaintiff proposed her list of arbitrators, Tesla picked the one that they knew that she will not accept a pro se. Ms. Balan asked JAMS how she could know if an arbitrator is accepting a pro se and she demanded a list of those arbitrators, JAMS came back and told her

PLAINTIFF'S RULE 60(B)(2)(3)(6) MOTION FOR RELIEF FROM THE ORDER GRANTING PARTIAL ARBITRATION & REQUEST FOR INDICATIVE RULING UNDER RULE 62.1, BASED ON  PLAINTIFF'S FIRST 180 DAYS CASE STATUS UPDATE OF ARBITRATION PER THE COURT'S REQUEST
 (CASE NO. 2:19-CV-00067-MJP)

8

they don't have such a list, and the only ones who know that information were JAMS or parties like Tesla who arbitrated before. Later, the Plaintiff found out that the Defendant arbitrated before with the same arbitrator they chose from Ms. Balan list, and so they knew she will not take a pro se case.

The Plaintiff's choice was limited to a list of arbitrators proposed by JAMS, many of them who had prior arbitrations with Tesla, and on which there were only two women (out of seven names provided to the parties to choose from). When the Plaintiff asked why, the answer was that they are the only two available.  How is this fair?

### 2.  <u>No Repercussions, Sanctions or Limits on the past due fees by Tesla</u>

JAMS does not limit the time when the Defendant should pay their fees, as of now they have thousands of cases in which the employers did not paid their fees for more than a year, fact which convinced Ms. Balan to pay the filing fee in order to have the Defendant sanctioned or forced to pay the fees. JAMS's administration told Ms. Balan that they will hold the fee into a special account until Tesla has to pay their arbitration retainer and soon after, they will reimburse her the money.

When the Plaintiff approached the arbitrator for the payment issue, during their first conference, the answer was as blunt as it could be:

"That's between you and JAMS. I know JAMS determine the minimum standard for employment cases which applies for this arbitration. So any fees and cost will be between the two parties and my office".

This is not right, nor legally constructed, and doesn't follow JAMS's own rules, as it already determined that it is Tesla's obligation to pay the filing fees, and according with their written rules, (they have a lot of unwritten ones, when it comes to pro se) the arbitrator not only must ask the responsible party to pay, but he should sanction them as well for non-payment. That didn't happen!

Even more shocking was the form that the Plaintiff was requested to sign after the parties first case management call which take us to the next big critical issue:

### 3.  <u>JAMS' "Unrepresented Party Statement" for *Pro Se* Litigants</u>

One of, if not the most concerning aspect of JAMS arbitration process for Plaintiff, was JAMS's so-called "Unrepresented Party Statement." This statement supposedly is a JAMS requirement, for all the pro se parties to sign (See Exhibit 16):

> "If in Hon. Richard J. McAdams (Ret.)'s sole opinion, I do not demonstrate an adequate comprehension of the issues or the significance of the proceedings, Hon. Richard J. McAdams (Ret.) **reserves the right to require me to seek the advice of counsel** before proceeding any further, and, **should I refuse such request**, Hon. Richard J. McAdams (Ret.) **will terminate the arbitration**.
>
> This certifies that I have read this addendum, that I fully understand and agree with these terms, and that I knowingly declined to seek the advice of independent counsel before signing this addendum."

Even more shocking of all this is that, as soon as Ms. Balan start asking questions and expressed her concerns, and asked JAMS arbitrator's assistant to show her this rule in JAMS's rulebook, as she couldn't find anything like that, JAMS had a change of heart in regards with their "unwritten" rules. (see Exhibits 17, 18 and 19).

Ms. Balan was told that it's ok if she refuses to sign the statement and, as long as she now knows the conditions of JAMS for pro se litigants, is the same thing.

So as of now, even if Ms. Balan didn't sign anything, JAMS says the conditions are the same and at any time, even before the actual hearing whenever that may be, she could have her case terminated if she is not hiring a lawyer.

This is not just shocking to conscience, but extremely unfair for someone that cannot afford a lawyer. She/he will not have the chance to justice? More than that, the fact that JAMS could not point out at any written rule, it is another occurrence when Plaintiff find herself dealing with the unwritten rules of JAMS, (after the list of arbitrators that don't accept pro se).

For this reason alone, the court should move the case back in federal court where at least Ms. Balan can have a fair chance as a pro se party!

PLAINTIFF'S RULE 60(B)(2)(3)(6) MOTION FOR RELIEF FROM THE ORDER GRANTING PARTIAL ARBITRATION & REQUEST FOR INDICATIVE RULING UNDER RULE 62.1, BASED ON  PLAINTIFF'S FIRST 180 DAYS CASE STATUS UPDATE OF ARBITRATION PER THE COURT'S REQUEST

 (CASE NO. 2:19-CV-00067-MJP)

10

4.  **Arbitrator decided to delay the start of arbitration until the parties will file their Appeal brief in the 9th Circuit**

During the first case management meeting with the arbitrator, Tesla tried to convince the arbitrator (as previously very confidently they expressed their opinion, that for sure, the arbitrator will side with them) to stay the arbitration until after the decision of the Court of Appeal - which now has a wait time of around two years.

Tesla did not try at any point to request a stay from the Court who issue the Order or a proper motion for that fact. A simple email was enough for the defendant to destroy the Plaintiff life for another two years.

After a strong argument from the Plaintiff, The arbitrator's decision was to delay his ruling of arbitration stay until the parties will file their appeal brief in the ninth circuit Court of Appeals, and then he will decide if he will order a stay until the appeal will be over.

The due date for Plaitiff opening brief was today January 6, 2020, but she requested a extension or a stay of her time to file, because she believes the Court should first look over this motion and case status update

5.  **The Lack of transparency of JAMS towards the Plaintiff**

The last Plaintiff's interaction with JAMS was on December 23, 2019 as she was preparing for this status report, she called JAMS and asked to have a copy of the receipt for Tesla's payment of their arbitrator's  retainer fee, so she can add it to the 180 days case management status. At the same time, she tried again to approach JAMS about the filing fee she paid, expressing her concern of the breach and asked JAMS to pay her back as promised.

The reaction from JAMS was very concerning, as she was bluntly told that she will never be able to see any receipts, or obtain confirmation of any payments between JAMS and Tesla, or how much was paid by Tesla, because that is a confidential thing between JAMS and his "Client" which is Tesla not the Plaintiff. According to JAMS these are information that will never be shared with anybody but the "Client".

PLAINTIFF'S RULE 60(B)(2)(3)(6) MOTION FOR RELIEF FROM THE ORDER GRANTING PARTIAL ARBITRATION & REQUEST FOR
INDICATIVE RULING UNDER RULE 62.1, BASED ON  PLAINTIFF'S FIRST 180 DAYS CASE STATUS UPDATE OF ARBITRATION PER THE
COURT'S REQUEST
 (CASE NO. 2:19-CV-00067-MJP)

11

To summarize Tesla and JAMS list of concerns regarding the arbitration fees: the Defendant never responded to multiple requests of payment by both JAMS and Plaintiff, JAMS told the Plaintiff the only way to get the Defendant to pay the fees or terminate the arbitration is to have first an arbitrator; The Plaintiff pays the filing fees; An available Arbitrator was hardly found because the Plaintiff is a Pro Se; Tesla again tests the water to see if they can stay the arbitration before paying their fees; When the Plaintiff tries to approach the arbitrator for Tesla's breach he said is not his problem: is between the Plaintiff and "the office"; The Plaintiff contacts "the office" just to be told she will never know if, when or how much their "Client" paid, including in regards to the fee she paid on the "Client's" behalf.

How it is JAMS a fair venue for an honest employee to find Justice? How can she believe Justice will be served, when she may be forced (at the whim of someone serving a "Client") to hire a lawyer which she cannot afford, after possibly years of litigation in arbitration? It is definitely not looking that fairness was ever on JAMS's agenda!

The Caselaw Section presented in this document, mostly judged by the 9th circuit, and the new law signed by the California Governor, that takes effect starting January 1, 2020, makes clear reference to the type of behavior perpetrated by Tesla and JAMS.

## C. TESLA'S CEO ELON MUSK CONTINUED TO DEFAME PUBLICLY THE PLAINTIFF

On August 8, 2019, If all the above were not enough, during these last six months, the CEO of Tesla, Elon Musk, defamed the Plaintiff thru a chain of emails between the entire Tesla board of directors and accused her "actively harassing" Tesla employees (see Exhibit 20)

To make sure that is made public, Musk or someone else from Tesla "leaked" the email to a Twitter fan and made it public. The Fan was later unveiled to be a customer of Tesla by the name of Omar Qazi. Mr Qazi denied any direct connection with Musk or Tesla, but somehow, he appeared last week with other selected "fans" Twitter accounts, to appear with the CEO of

PLAINTIFF'S RULE 60(B)(2)(3)(6) MOTION FOR RELIEF FROM THE ORDER GRANTING PARTIAL ARBITRATION & REQUEST FOR INDICATIVE RULING UNDER RULE 62.1, BASED ON  PLAINTIFF'S FIRST 180 DAYS CASE STATUS UPDATE OF ARBITRATION PER THE COURT'S REQUEST
(CASE NO. 2:19-CV-00067-MJP)

12

Tesla and his brother to a Podcast (See exhibit 23). Some of these invitees harassed and trashed Ms Balan and her claims before, calling her anything from a crazy person to a criminal and a thief.

We are wondering how come an email like the one who put Ms Balan, again in a very bad light, ends up being public and a company like Tesla and its CEO doesn't mind or question the so called "leaking" episodes, which happened suspiciously every time when Tesla feels like it suits them. It is worth mentioning that Mr. Musk has a long history of stirring his followers with his tweets - notably as both Tesla and his CEO had to pay $20 million each to SEC for one of his tweets. When asked about the fine Mr Musk replied that "it was worth it".

What happened last week though, confirms the connection between the Twitter army that Tesla is using, instead of what any other decent company calls marketing, with the sole purpose of hurting people, thrashing and threatening people and sometime their employers, as it happened many times before, incited directly by Tesla's CEO himself.

Nevertheless, on September 5, 2019, Ms Balan asked Tesla's legal attorney for this case, to request the retraction of the comments made about the Ms Balan (see Exhibit 20). Tesla and its CEO refused to do that on September 11, 2019 (see Exhibit 22).

It is also significant to point out the timing of another comment made on Twitter by Tesla's CEO, On September 8, 2019 (see Exhibit 23), mocking the Plaintiff's native country (Romania) flag by comparing it with an African country's flag and asking: "why aren't more people talking about this?", two days before Tesla's attorney answered back denying the retraction of the comments described above.

Knowing Tesla and its CEO, Plaintiff has reasonable ground to believe that this was not a random comment. This comment alone had 15,000 re-tweets and more than 145,000 likes. This fact alone shows especially why the Plaintiff and many others are concerned of the power of bullying Tesla and its CEO are capable of.

As a result of these types of "leaks" and "tweets" Plaintiff endured abusive reactions ranging from "if you hurt Tesla, you upset God!" as God apparently told some Tesla followers

PLAINTIFF'S RULE 60(B)(2)(3)(6) MOTION FOR RELIEF FROM THE ORDER GRANTING PARTIAL ARBITRATION & REQUEST FOR INDICATIVE RULING UNDER RULE 62.1, BASED ON  PLAINTIFF'S FIRST 180 DAYS CASE STATUS UPDATE OF ARBITRATION PER THE COURT'S REQUEST
 (CASE NO. 2:19-CV-00067-MJP)

13

that she needs to be stopped from pursuing the lawsuit, to direct threats like "you deserve what is coming for you" and "we know where you live". All these occurrences lead to the point where she's had problems sleeping or having a normal activity with her son, after she realized she was followed a few times and her personal information was displayed on social media.

As the crown jewel of the defamatory activities, the Plaintiff now is facing the possibility of waiting for more than two years, for the Ninth Court of Appeal to issue a decision, all the while Tesla and his CEO are continuing unrestrained to entertain their millions of followers with more smear campaigns. This cannot be fair for any honest person who never committed any of acts Tesla publicly lied about her, with malice, knowing it is not true. She cannot have a normal life, a job, she cannot care for her son and her business like she dreams so much. All this because of a company and its CEO which can afford to destroy anyone they feel like it, no matter what, because in the end "is worth it"

## II.  JURISDICTION TO GRANT RELIEF FROM AN ORDER WHEN AN APPEAL IS PENDING

As the Plaintiff educated herself to file for a motion to relief per FRCP 60(b) for the part of the order that the defendant didn't appeal, she learned, that Most of the time, "a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58, 103 S. Ct. 400, 74 L. Ed. 2d 225 (1982).  The limited remand procedure invoked here is an exception. The rule 62.1.

One court explained: "The procedure that must be followed under Rule 62.1 first involves asking the District Court to indicate what it would do with the question, or at least consider whether there is a serious issue raised."  Defenders of Wildlife v. Salazar, 776 F. Supp. 2d 1178, 1182 (D. Mont. 2011).  The pertinent rule instructs: (a) Relief Pending Appeal. If a timely motion is made for relief that the court lacks authority to grant because of an appeal

PLAINTIFF'S RULE 60(B)(2)(3)(6) MOTION FOR RELIEF FROM THE ORDER GRANTING PARTIAL ARBITRATION & REQUEST FOR INDICATIVE RULING UNDER RULE 62.1, BASED ON  PLAINTIFF'S FIRST 180 DAYS CASE STATUS UPDATE OF ARBITRATION PER THE COURT'S REQUEST
 (CASE NO. 2:19-CV-00067-MJP)

14

that has been docketed and is pending, the [district] court may: (1) defer considering the motion; (2)   deny the motion; (3)   state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

Fed. R. Civ. P. 62.1(a).  The trial judge's "suggestion for remand" in subsection (3) is called, by custom and practice, an "'indicative ruling.'"   Id., Adv. Comm. Notes (2009 Adoption).

If the trial judge is "inclined to grant the request for an indicative ruling," the next step "is to tell the parties and the Circuit Court of [this] intent."  Defenders of Wildlife, 776 F. Supp. 2d at 1182.  It is then "up to the Circuit Court to decide whether it will send the case back to the District Court and empower the lower court to rule."  Id.  If a limited remand is granted, the Ninth Circuit "retains jurisdiction unless it expressly dismisses the appeal."  Fed. R. App. P. 12.1(b).

In this case the Court issued an order granted in part and denying in part the motion to compel arbitration in the idea the Defendant will follow the rules made in their arbitration agreement, the promises before the court in their motion to compel arbitration and during oral argument. That did not happen!

Because of the material breach of the arbitration agreement and the bad faith that the Defendant showed since they were partially granted to compel arbitration in the section I, Plaintiff believes are "substantial issues" that requires immediate intervention of the court, it is done in a timely manner, so she respectfully request the court to move to consider the motion per rule 62.1 (a)(3).

If the Court chooses the third option, the movant must seek leave of the Court of Appeals to relinquish jurisdiction.  See Fed. R. App. P. 12.1; see also Toliver, 957 F.3d at 49 ("In other words, before the district court may grant a rule 60(b) motion, th[e Court of Appeals] must first give its consent so it can remand the case, thereby returning jurisdiction over the case to the district court.").

PLAINTIFF'S RULE 60(B)(2)(3)(6) MOTION FOR RELIEF FROM THE ORDER GRANTING PARTIAL ARBITRATION & REQUEST FOR INDICATIVE RULING UNDER RULE 62.1, BASED ON  PLAINTIFF'S FIRST 180 DAYS CASE STATUS UPDATE OF ARBITRATION PER THE COURT'S REQUEST
 (CASE NO. 2:19-CV-00067-MJP)

15

### III.   LAWS THAT SUPORT THE REQUEST TO MOVE CASE IN THE FEDERAL COURT

#### 1.   NEW CALIFORNIA LAW SB 707 AGAINST EMPLOYERS WHO FAILS TO PAY THE FEES AND COSTS OF THE ARBITRATION

According with **a New Law that got sign by the governor of California on October 14th, 2019, in their effort to try to stop the injustice committed by a lot of California Employers, the governor decided to sign the SB 707** law to bring justice in a very grey and dark area of the law:

> "In an employment or consumer arbitration in which the drafting party, as defined, is required to pay certain fees and costs before the arbitration can proceed, this bill would provide that if the fees or costs to initiate an arbitration proceeding **are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration**.

> 'If the drafting party materially breaches the arbitration agreement and is in default of the arbitration, **the bill would authorize the employee […] withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction,"**

> "The bill would further **require the court to impose a monetary sanction** on the drafting party who materially breaches an arbitration agreement, and **would authorize the court to impose other sanctions, as specified**."

> " **A company's strategic non-payment of fees and costs severely prejudices** the ability of employees or consumers to vindicate their rights. This practice is particularly **problematic and unfair when the party failing or refusing to pay those fees and costs is the party that imposed the obligation to arbitrate disputes**."

SB 707 seeks to end an abusive tactic that employers use to deny their employees justice—forcing them to arbitrate their legal claims and then suspending the process by refusing to pay the arbitration fees. The bill pulls employees out of this legal limbo by giving them options that allow them to proceed with their cases despite employer non-cooperation.

California Employment Lawyers Association, one of the bill's sponsors, describing how this stall tactic causes "costly delays that jeopardize an employee's ability to find evidence and

PLAINTIFF'S RULE 60(B)(2)(3)(6) MOTION FOR RELIEF FROM THE ORDER GRANTING PARTIAL ARBITRATION & REQUEST FOR INDICATIVE RULING UNDER RULE 62.1, BASED ON  PLAINTIFF'S FIRST 180 DAYS CASE STATUS UPDATE OF ARBITRATION PER THE COURT'S REQUEST
 (CASE NO. 2:19-CV-00067-MJP)

16

witnesses " Employers are also strategically withholding payments at the end of an arbitration to prevent the release of favorable judgments to employees. The bill analysis, quoting CELA, explained that "this scenario can be even more damaging and prejudicial, as the employee or consumer has likely already invested significant resources to develop their case."

Indeed SB 707's bill analysis described how large corporations such as Uber, Lyft, and Chipotle are stifling workers' access to arbitration by refusing to pay initiation or case-management fees under JAMS to tens of thousands of employees.

*Employer representatives* expressed concerns regarding the actions or omissions that could qualify as a "material breach" and trigger such damaging consequences. For example, employer groups argued that a material breach could be found even if only a small portion of the fees or costs were not paid. Employers with only nominal violations would be liable for the same list of punishments as a company that intentionally withheld the entire payment in an effort to delay the arbitration.

Ultimately, however, Governor Newsom was not swayed by these arguments and signed SB 707 into law.

"Businesses and employers should not be allowed to force Californians into arbitration and then flout the system by stalling or stopping payment to the arbitrator when a case is not going their way," said Wieckowski, a member of the Senate Judiciary Committee.

"They created the arbitration agreement and they must abide by it. Workers and consumers are already being denied their day in court through forced arbitration.  SB 707 gives them options and remedies should companies refuse to pay on time."

As of now companies like Uber, Lyft, and Chipotle are obstructing the arbitration process to tens of thousands of employees, SB 707 imposes mandatory monetary sanctions on any drafting party who fails to timely pay arbitration costs and fees, and permits the imposition of additional evidentiary, terminating, or contempt sanctions, as the court or arbitrator sees fit

PLAINTIFF'S RULE 60(B)(2)(3)(6) MOTION FOR RELIEF FROM THE ORDER GRANTING PARTIAL ARBITRATION & REQUEST FOR INDICATIVE RULING UNDER RULE 62.1, BASED ON  PLAINTIFF'S FIRST 180 DAYS CASE STATUS UPDATE OF ARBITRATION PER THE COURT'S REQUEST
 (CASE NO. 2:19-CV-00067-MJP)

17

Rene Bayardo, senior government relations advocate for SEIU California said that "When workers are prohibited from resolving their disputes in court, and companies willfully obstruct arbitration proceedings, there is no avenue for justice"

Under California law, "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." Armendariz v. Found. Health Psychcare Servs., Inc.

The bill would declare that a company that fails to make timely payments is in material breach of the arbitration contract. Workers or consumers could withdraw from the arbitration and pursue court action or compel arbitration under the contract.

Well Ms Balan Paid the filling fee when she was told the only way to terminate her arbitration and sanction the defendant was by an arbitrator. That did not happen and even worse the arbitrator or JAMS refuse to not just give her money back, but to even tell her if tesla paid or not and how much.

## 2. <u>OTHER CASELAWS FROM DECISIONS OF THE 9<u>th</u> CIRUCIT</u>

In Brown v. Dillard's, Inc. (2005) 430 F.3d 1004, the United States Court of Appeals for the Ninth Circuit held that, under federal law, an employer's refusal to participate in arbitration pursuant to a mandatory arbitration provision constituted a breach of the arbitration agreement. In Sink v. Aden Enterprises, Inc. (2003) 352 F.3d 1197, the Ninth Circuit held that, under federal law, an employer's failure to pay arbitration fees as required by an arbitration agreement constitutes a material breach of that agreement and results in a default in the arbitration.

In Armendariz v. Foundation Health Psychcare Services, Inc., Brown v. Dillard's, Inc., and Sink v. Aden Enterprises, Inc. that a company's failure to pay arbitration fees pursuant to a

mandatory arbitration provision constitutes a breach of the arbitration agreement and allows the non-breaching party to bring a claim in court.

One case law from the Supreme Court of New Jersey turned for guidance to courts in the U.S. Court of Appeals for the Ninth Circuits which held that permitting a party to refuse to fulfill its obligations under an arbitration agreement, including -payment of arbitration fees, would constitute a material breach as it would allow one party to frustrate the aggrieved party's attempts to resolve its claims.

In effect a "perverse incentive scheme" would be created which might encourage a party "to refuse to participate in properly initiated arbitration proceedings," in the hope that the frustrated plaintiff would abandon its claims, as in Brown v. Dillard's, 430 F. 3rd 1004, 1012, (9th Cir. 2005). If one party repeatedly failed to cooperate with the arbitration, the other would be required to file a potentially unending cycle of motions seeking court orders directing such cooperation.

In addition, the court found that defendants had not satisfied their "duty of good faith and fair dealing." The judge added "the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." Must be consider on top failing to pay their fees.

The Ninth Circuit held that the "failure to pay required costs of arbitration [is] a material breach" of an arbitration agreement. In one of these cases, the Ninth Circuit emphasized the delay and gamesmanship that could result if parties were allowed to ignore their obligations to pay arbitration fees without consequence:

> [T]he sole remedy available to a party prejudiced by default would be a court order compelling a return to arbitration. The same offending party could then default a second time, and the prejudiced party's sole remedy, again, would be another order compelling arbitration. This cycle could continue, resulting in frustration of the aggrieved party's attempts to resolve its claims.

A "material breach" is one that "strikes at the very heart" of the agreement. Globe Motor Co. v. Igdalev, 436 N.J. Super. 594, 606 (2014).

PLAINTIFF'S RULE 60(B)(2)(3)(6) MOTION FOR RELIEF FROM THE ORDER GRANTING PARTIAL ARBITRATION & REQUEST FOR INDICATIVE RULING UNDER RULE 62.1, BASED ON  PLAINTIFF'S FIRST 180 DAYS CASE STATUS UPDATE OF ARBITRATION PER THE COURT'S REQUEST
 (CASE NO. 2:19-CV-00067-MJP)

19

IV. **THE JUDGE SHOULD ALLOW ALL THE PLAINTIFF'S CLAIMS TO MOVE IN COURT**

Under Plaintiff's arbitration agreement with Tesla, Tesla is required to pay all of the fees of the arbitration. Tesla has made clear that it wishes to delay this arbitration, just as it behaved in an obstructionist manner in the district court. As a result, it has refused to pay JAMS's fees, with the idea that it will delay the beginning of the arbitration. This conduct is a breach of the contract with Ms. Balan and it is unethical for its lawyers to encourage or allow it. It is obviously Tesla's and its lawyer's intent to deny Ms. Balan the chance at having a hearing in any court or in any arbitration. This behavior is abusive, and it is grossly unfair

As a conclusion, we see that JAMS's behavior is clearly biased towards favoring the employer (aka "THE CLIENT") at the disadvantage of the employee. As we saw from other case law, other arbitration houses impose strict due dates for paying the arbitration associated fees and, if the due dates are not met, they are terminating not only that case, but they are not allowing that specific company to ever arbitrate with them. This has never happened in JAMS, again showing the bias they have towards the employer (which they call "THE CLIENT"). obviously, this is the reason why Tesla argued so hard to not have their arbitration under the federal court, as your honor suggested during oral arguments.

Taking into account how obstructionist was the Defendant's behavior and, for good reason, the concerns Your Honor shared during the oral arguments are clearly showing us that they have become a reality and it is only going to get even worse, with issues the court and the Plaintiff never thought of when the order was issued.

For the issues described above and as a result of Tesla's continuing bad faith misconduct (despite such conduct having been called out by the district judge), Ms. Balan respectfully request that the judge immediate determines that, in light of this ongoing behavior, there should not be any longer an arbitration and that the case may proceed in Court.

DATED: January 7, 2020.                    /s/ Cristina Balan_____

                                                                    Cristina Balan, Pro Se Plaintiff

PLAINTIFF'S RULE 60(B)(2)(3)(6) MOTION FOR RELIEF FROM THE ORDER GRANTING PARTIAL ARBITRATION & REQUEST FOR INDICATIVE RULING UNDER RULE 62.1, BASED ON  PLAINTIFF'S FIRST 180 DAYS CASE STATUS UPDATE OF ARBITRATION PER THE COURT'S REQUEST
 (CASE NO. 2:19-CV-00067-MJP)

20

**CERTIFICATE OF SERVICE**

I hereby certify that on January 7, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice. I hereby certify that the foregoing document was sent to the following CM/ECF participants:

Darin M. Sands
Lane Powell PC
601 SW Second Ave., Suite 2100
Portland, Oregon 97204-3158
Email: sandsd@lanepowell.com

Matthew C. Lewis
Rodney B. Sorensen
Payne & Fears LLP
235 Pine St., Suite 1175
San Francisco, CA 94104
Email: mcl@paynefears.com
rbs@paynefears.com
*Attorneys for Defendant Tesla, Inc., formerly Tesla Motors, Inc.*

Executed on the 7th day of January, 2020, by


/s/ Cristina Balan

**CRISTINA BALAN, PRO SE PLAINTIFF**

CERTIFICATE OF SERVICE
(Case No.: 2:19-cv-00067-MJP)