1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10

| CRISTINA BALAN, | CASE NO. C19-67 MJP |
|---|---|
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND TRANSFER |
| v. | |
| TESLA MOTORS INC. | |
| Defendant. | |

11
12
13
14
15

16        This matter comes before the Court on Plaintiff's Motion to Vacate the Arbitration

17  Award (Dkt. No. 83) and Defendants' Motion to Dismiss or Transfer Plaintiff's Motion to

18  Vacate (Dkt. No. 87).

19        Having considered the Motions, the Oppositions (Dkt. Nos. 90, 99), the Replies (Dkt.

20  Nos. 97, 100), and all supporting materials, the Court GRANTS Defendants' Motion. The Court

21  DISMISSES the claims against Defendant Elon Musk for lack of personal jurisdiction and

22  TRANSFERS the action against Defendant Tesla Motors, Inc. to the Northern District of

23
24

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND TRANSFER - 1

1    California. The Court does not reach Plaintiff's Motion, which shall be addressed after transfer

2    by the Northern District of California.

3                                    **BACKGROUND**

4        In January 2019, Plaintiff Cristina Balan filed suit against her former employer, Tesla

5    Motors, asserting a claim of defamation. (Complaint (Dkt. No. 1).) After remand from the Ninth

6    Circuit, the Court ordered this matter submitted to arbitration in San Francisco and closed the

7    case. (Dkt. No. 75.) During the arbitration, Balan filed an Amended Statement of Claims, which

8    named Musk as a defendant and asserted a new claim of defamation against him related to

9    comments he made in August 2019. (Declaration of Micheal Weil, Ex. C. (Dkt. No. 88-3).) The

10   Parties have since completed arbitration, which resulted in an arbitrator's award in favor of Tesla

11   and Musk (together, "Defendants"). Defendants then filed an application in the Northern District

12   of California to confirm the award. (Tesla v. Balan, Case No. 4:21-cv-9325-HSG, Application

13   (Dkt. No. 1) (N.D. Cal. Dec. 2, 2021); Weil Dec. Ex. E. (Dkt. No. 88-5).)  After Defendants filed

14   their application, Balan filed a Motion to Vacate the Arbitration Award with this Court, which

15   the Court construes as an application to vacate the arbitration award under 9 U.S.C. § 10. (Dkt.

16   No. 83); see 9 U.S.C. § 10 (providing authority to a district court to vacate an arbitration award

17   upon the application of a party to the arbitration); Cortez Byrd Chips, Inc. v. Bill Harbert Const.

18   Co., 529 U.S. 193, 200-04 (2000) (recognizing that under 9 U.S.C. § 10, applications begin a

19   separate proceeding).

20       Defendants oppose the Application and have separately moved to dismiss it or transfer

21   this matter to the Northern District of California. Defendants argue that Balan's Application must

22   be dismissed because she fails to join Musk, an indispensable party. (Dkt. No. 87 at 4-6.) In the

23   alternative, Defendants argue that if Balan properly joined Musk, the Court lacks personal

24

1    jurisdiction over him, requiring dismissal of Balan's claim as applied to Musk. (Id. at 6-8.) For

2    Balan's remaining claims against Tesla, Defendants ask the Court to transfer the Application to

3    the Northern District of California under the first-to-file rule or 28 U.S.C. § 1404. (Id. at 8-11.)

4         In opposition, Balan asserts that Defendants' Motion to Transfer must be denied because

5    the Court retained jurisdiction, making it the proper court to confirm or vacate the arbitration

6    award. (Opp. to Mot. to Dismiss at 3-5 (Dkt. No. 99).) Balan also contends that Musk is not an

7    indispensable party because her second claim of defamation is imputed onto Tesla by nature of

8    Musk's position in the company and the fact that the alleged defamatory statements were made

9    by Musk as Tesla's CEO, not as an individual. (Id. at 5-8.)

10                                **ANALYSIS**

11        Because Defendants' Motion raises jurisdictional issues, the Court resolves them first

12   before considering Balan's Application. As part of its analysis, the Court first considers whether

13   Musk has been named as a party to the Application. The Court then analyzes whether it has

14   personal jurisdiction over Musk. Lastly, the Court considers whether this action should be

15   transferred to the Northern District of California. Given the Court's conclusion that it lacks

16   personal jurisdiction over Musk–a named party–and that Balan's claims against Tesla should be

17   transferred, the Court does not reach the merits of Balan's Application.

18   **A.    Musk is a Named Party**

19        Defendants seek dismissal of the entire action on the theory that Musk is an unnamed, but

20   indispensable party to this action. (See Mot. to Dismiss at 4-6.) The Court disagrees, finding

21   instead that Musk is a named party to Balan's Application and that Federal Rule of Civil

22   Procedure 19 has no application.

23

24

1        Under the Federal Arbitration Act ("FAA"), the Court construes Balan's Motion to

2    Vacate as an application to vacate the arbitrator's award, which is a separate action from her

3    initial civil action filed with this Court. See Cortez, 529 U.S. at 200-04 (recognizing that motions

4    under 9 U.S.C. § 10 begin a separate proceeding and that venue is not limited to the district

5    where the arbitration occurred); Badgerow v. Walters, __ U.S. __, 142 S.Ct. 1310, 1320-21

6    (2022) (distinguishing a motion from a FAA application to confirm or vacate); see also Aero Air,

7    L.L.C. v. Sino Swearingen Aircraft Corp., No. CV-07-283-ST, 2007 WL 9809067 (D.Or. Mar.

8    13, 2007) (finding the plaintiff's motion to vacate was a new, separate cause of action,

9    independent from state court actions that addressed only the arbitrability of the claims). The

10   Supreme Court reaffirmed this recently by clarifying that applications to confirm or vacate

11   arbitration awards under Section 9 and 10 of the FAA are separate from the underlying dispute.

12   See Badgerow, 142 S.Ct. at 1321.

13       Given this authority, the Court's analysis of whether Musk is a named party requires it to

14   consider the Application, rather than the complaint filed in the matter that has since been

15   dismissed and ordered into arbitration. And because Balan is pro se, the Court must construe her

16   Application liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed pro se

17   is to be liberally construed."). The Court also holds the Application "to less stringent standards

18   than formal pleadings drafted by lawyers." Id. Fed. R. Civ. P. 8(e) (All "pleadings must be

19   construed so as to do justice.").

20       Liberally construing Balan's Application, the Court finds that she has named Musk as a

21   party to the action. Though Balan failed to add Musk as a defendant in the caption of her

22   Application, she identifies Tesla and Musk as Defendants in her opening sentence and repeatedly

23   refers to "Defendants" throughout. (See generally Mot. to Vacate.) And because no other

24

1  pleading is necessary to commence an application to vacate, the Court is satisfied that Musk has

2  been named. The Court also notes that Balan amended her arbitration demand to specifically

3  name Musk as a defendant and added a separate claim of defamation against him. (Weil Dec. Ex.

4  C.) And Balan's Application to Vacate seeks relief from the arbitration award dismissing her

5  claims against both Tesla and Musk. (Mot. to Vacate.) There is nothing in Balan's Application to

6  suggest that she seeks relief only as to Tesla, but not as to Musk. And because the Court focuses

7  on the four corners of the Application, it does not matter that Musk was not named in the initial

8  civil action filed with the Court that has since been terminated. The Court finds Balan properly

9  named Musk as a party to the application, which makes Defendants' arguments under Rule 19

10 irrelevant.

11 **B.    Personal Jurisdiction over Musk**

12      Defendants alternatively argue that if Balan properly named Musk as a defendant, the

13 Court nonetheless lacks personal jurisdiction over him. The Court agrees.

14      Where no federal statute authorizes personal jurisdiction, the district court applies the law

15 of the state in which the district court sits. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d

16 1218, 1223 (9th Cir. 2011). Because the FAA does not authorize personal jurisdiction, the

17 analysis turns to Washington's long-arm statute. JP Morgan Chase Bank, N.A. v. Jones, No.

18 C15-1176RAJ, 2016 WL 1182153, at *10 (W.D. Wash. Mar. 28, 2016). Washington's long-arm

19 statute permits the exercise of jurisdiction to the full extent of the due process clause of the

20 United States Constitution. See RCW 4.287.185; Easter v. Am. W. Fin., 381 F.3d 948, 960 (9th

21 Cir. 2004).

22

23

24

1    Under the due process analysis, a defendant may be subject to either general or specific

2    personal jurisdiction. <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414

3    (1984).The Court considers both potential bases for personal jurisdiction.

4    **1.    General Jurisdiction**

5    A court may assert general jurisdiction over a defendant when their affiliations with the

6    state are so "continuous and systematic" as to render them essentially at home in the forum state.

7    <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011) (citing <u>Int'l Shoe</u>

8    <u>Co. v. Wash.</u>, 326 U.S. 310, 317 (1945)). Here, there is no evidence that Musk is subject to

9    general jursidiction in Washington. Musk is not a resident of Washington and Balan has not

10   identified any contacts Musk has with the State that would render him subject to general

11   jurisdiction.

12   **2.    Specific Jurisdiction**

13   Specific jurisdiction applies if: "(1) the defendant has performed some act or

14   consummated some transaction within the forum state or otherwise purposefully availed himself

15   of the privileges of conducting activities in the forum, (2) the claim arises out of or results from

16   the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable."

17   <u>Easter</u>, 381 F.3d at 960-61 (quoting <u>Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.</u>, 223 F.3d

18   1082, 1086 (9th Cir. 2000)).

19   Under the first element, Balan is required to demonstrate that Musk "purposefully availed

20   himself of the privilege of conducting activities in the forum." <u>Pebble Beach Co. v. Caddy</u>, 453

21   F.3d 1151, 1155 (9th Cir. 2006) (internal citations omitted). "A purposeful availment analysis is

22   most often used in suits sounding in contract, while a purposeful direction analysis is most often

23   used in suits sounding in tort." <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 802

24

1    (9th Cir. 2004) (internal citations omitted). Here, the Application relates to the arbitration

2    agreement that sounds in contract and requires a purposeful availment analysis. See Badgerow,

3    142 S.Ct. at 1316-17 (clarifying that an arbitration award "is no more than a contractual

4    resolution of the parties' dispute. . .").

5            In order for a defendant to have purposefully availed themselves, they must have performed

6    some type of affirmative conduct which allows or promotes the transaction of business within the

7    forum state. Boschetto v. Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008) (internal quotation marks

8    and citation omitted). Courts have previously emphasized using a "highly realistic approach that

9    recognizes that contract is ordinarily but an intermediate step serving to tie up prior business

10   negotiations with future consequences which themselves are the real object of the business

11   transaction." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985). Here, the contract at

12   issue is the arbitration award, and the arbitration took place in San Francisco. (Mot. to Dismiss at

13   11:6-7.) Nothing about the arbitration relates to Washington and Musk does not appear to have

14   performed any type of conduct related to the arbitration that promotes business within the State.

15   Balan has failed to establish that the arbitration and outcome are sufficient for Musk to have

16   purposefully availed himself of Washington.

17           Because Balan has failed to satisfy the first element of specific jurisdiction, the Court

18   concludes that it lacks personal jurisdiction over Musk. The Court GRANTS Defendants'

19   Motion to Dismiss in part and dismisses the claims asserted against Musk without prejudice.

20   This ruling, however, does not affect the claims against Tesla, which the Court considers in

21   Section C.

22   **C.      First-to-File Rule**

23

24

1    Invoking the first-to-file rule, Tesla asks the Court to transfer Balan's Application to

2  Tesla to the Northern District of California, where its motion to enforce the arbitration award

3  remains pending. The Court agrees.

4    The first-to-file rule "permits a district court to decline jurisdiction over an action when

5  a complaint involving the same parties and issues has already been filed in another district."

6  Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982). In determining

7  whether the first-to-file rule applies, courts analyze three factors: (1) chronology of the lawsuits,

8  (2) similarity of the parties, and (3) similarity of the issues. Kohn Law Group, Inc. v. Auto Parts

9  Mfg. Mississippi, Inc., 787 F.3d 1237, 1240 (9th Cir. 2015).  If the rule applies, the district court

10  may transfer, stay, or dismiss an action under these circumstances. Alltrade, Inc. v. Uniweld

11  Prods., Inc, 946 F.2d 622, 623 (9th Cir. 1991). The first-to-file rule is intended to "serve[] the

12  purpose of promoting efficiency well and should not be disregarded lightly." Id. at 625

13  (alteration in original). "When applying the first-to-file rule, courts should be driven to maximize

14  economy, consistency, and comity." Kohn, 787 F.3d at 1240.

15    All three of the factors here support application of the first-to-file rule. As part of this

16  analysis, the Court considers Balan's Application and Defendants' pending application to

17  enforce the arbitration. First, the two actions concern the same arbitration and involve

18  overlapping issues arising out of it. Second, the parties are the same as between the two actions.

19  Third, Defendants filed their application before Balan filed hers. (Compare Tesla v. Balan, Case

20  No. 4:21-cv-9325-HSG, Application (Dkt. No. 1) (N.D. Cal. Dec. 2, 2021) with Balan v. Tesla,

21  C19-67MJP, Motion to Vacate (Dkt. No. 83) (filed February 22, 2022).) All three factors support

22  transfer, which will also promote efficiency, economy, and comity. See Kohn, 787 F.3d at 1240.

23

24

The Court GRANTS Tesla's Motion to Transfer. And given this determination, the Court does not reach Defendants' argument that transfer is appropriate under 28 U.S.C. § 1404.

## CONCLUSION

Defendants have demonstrated that although Musk is a named party, the Court lacks personal jurisdiction over him. And Defendants have convinced the Court that this matter should be transferred to the U.S. District Court for the Northern District of California under the first-to-file rule. The Court therefore GRANTS Defendants' Motion. The Court DISMISSES WITHOUT PREJUDICE the claims against Musk for lack of personal jurisdiction and TRANSFERS Balan's Application as to Tesla to the U.S. District Court for the Northern District of California pursuant to the first-to-file rule. The Court does not reach the merits of Balan's Application, which shall be considered, instead, by the Northern District of California.

The clerk is ordered to provide copies of this order to Balan and all counsel.

Dated June 16, 2022.

Marsha J. Pechman
United States Senior District Judge